UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

**BARRY WAYNE RAYNER**                                                              **PLAINTIFF**

**v.**                                                                 **CIVIL ACTION NO. 3:07-CV-P124-S**

**JOHN D. REES et al.**                                                    **DEFENDANTS**

### MEMORANDUM OPINION

The plaintiff, Barry Wayne Rayner, filed a *pro se*, *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 (DN 1). This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997). For the reasons set forth below, the Court will dismiss certain claims and allow other claims to go forward.

### I. SUMMARY OF CLAIMS

The plaintiff is housed at Louisville Metropolitan Department of Corrections (Louisville Metro). He names as defendants the following: John D. Rees, Commissioner, Department of Corrections; Tom Campbell, Director of Louisville Metro; Laura McKune, Director, Inmate Services, Louisville Metro; Judge Barry Willett, Jefferson Circuit Court; Judge Frederick Cowan, Jefferson Circuit Court; Judge Jacquelyn Eckert, Jefferson District Court; Judge Angela McCormick-Bisig, Jefferson District Court; Irv Maze, Jefferson County Attorney; and David R. Stengel, Commonwealth Attorney. He sues each defendant in his or her individual and official capacity.

He raises claims of the denial of his right to represent himself, denial of access to the courts, excessive bail, overcrowding, retaliation, denial of medical care, and conspiracy. He requests injunctive relief ordering a law library and legal assistants for inmates or ordering his immediate release to pursue his appeal and court cases. He also requests that the Court order a

---

reduction in overcrowding and to set policies to monitor and control overcrowding or, alternatively, to release him on his own recognizance. He further requests money damages in the amount of lost wages, phone charges, and attorney fees, and punitive damages of $1,000,000. The particulars of the plaintiff's claims will be set forth below.

## II. ANALYSIS

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the action, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b)(1) and (2). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. When determining whether a plaintiff has stated a claim upon which relief can be granted, the court must construe the complaint in a light most favorable to the plaintiff and accept all of the factual allegations as true. *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002). A complaint, or portion thereof, should be dismissed for failure to state a claim upon which relief may be granted "only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000).

While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam), a plaintiff is required to plead more than bare legal conclusions. *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996). Therefore,

the "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Id.* (internal quotation marks and citations omitted).

*A.    Claims against the judges*

In Count I of his complaint, the plaintiff alleges that he has been denied his right to plead and conduct his own case pursuant to 28 U.S.C. § 1654.[1]  He alleges that he has been in Louisville Metro under the direct control of Campbell since October 2006 and that the inmate handbook states that Louisville Metro has an inmate law library.  He alleges that he has criminal cases against him pending in both Jefferson Circuit and Jefferson District Courts and that he has elected to act as his own counsel in these cases but that both courts effectively have denied, obstructed, or suspended his right to act as his own counsel.  He asserts that, although he advised Judge Willett that he wished to act as his own counsel, Judge Willett ordered him to use the public defender; the public defender then, against the plaintiff's wishes entered a not-guilty plea and waived his right to a reading of the indictment.  The plaintiff alleges that Judge Willet stated that he would consider whether the plaintiff could act as his own counsel and let the plaintiff know at a hearing scheduled for March 12, 2007.

The plaintiff further alleges that on January 22, 2007, Judges Willett and Cowan refused to order Louisville Metro to transport him to court to be heard on motions that the plaintiff had filed; conducted business without him; and neglected to inform him of the outcome of his motions.  The plaintiff alleges that on February 5, 2007, Judge Willett told him that he needed to

---

[1] That statute provides: "In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein."

file a motion to be able to conduct his own defense despite the fact that he had no access to court and the fact that he had stated on two occasions that he wished to act as his own counsel. He alleges that Judge Willett has not timely responded to a February 5, 2007, discovery motion he filed. He further alleges that on several occasions he notified Judges Willett, Cowan, and McCormick-Bisig about the denial and obstruction of his right to access the courts and the overcrowding in Louisville Metro, to no avail.

In Count III of his complaint, the plaintiff alleges that he was subjected to excessive bail when the Jefferson County Circuit Court set his bail at $100,000 full cash bond despite the fact that he had never missed a court date in the Jefferson County courts. He also alleges in this count that he was denied an appeal bond and that his rights to conduct his own appeal and to petition for a writ of habeas corpus are being denied.

The plaintiff's claims for monetary damages against all of the judges are barred by the doctrine of absolute judicial immunity, under which judges are immune from monetary liability for decisions made within the scope of their official functions. *See Pierson v. Ray*, 386 U.S. 547, 553-54 (1967); *Brookings v. Clunk*, 389 F.3d 614, 617 (6th Cir. 2004).

The plaintiff's claims for injunctive relief against the state court judges also must be dismissed. Section 1983 provides in pertinent part that "except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, *injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable*." The plaintiff does not allege any facts suggesting that a declaratory decree was violated or that declaratory relief was unavailable. Therefore, all of the plaintiff's claims against Judges Willett, Cowan, Eckert, and McCormick-Bisig will be dismissed by

4

separate order.  *See Azubuko v. Royal*, 443 F.3d 302, 303-04 (3d Cir. 2006).

B.      *Denial of access to the courts due to restricted access to law library*

In Count II of his complaint, the plaintiff alleges that Rees and Campbell, acting with the other defendants, denied his right of access to the courts by refusing him legal research materials to conduct his defense.  The plaintiff alleges that Louisville Metro's law library is not adequate to insure meaningful access to the courts.  He alleges that, since December 22, 2005, he has requested access to the inmate law library and was finally given an inmate Law Library Request Form.  He states that he filed a grievance to speak with the inmate legal assistant, but his request was denied because Louisville Metro has no legal assistant.  He states that he filled out several grievances, the response to which was that the plaintiff's access to research material was restricted to filling out a Law Library Request Form and that Louisville Metro did not have law books on hand but he could be given print-outs of the items he needed.  He states that the inmate handbook states that its law library holdings has law from all 50 states, but that the Law Library Request Form requires that inmates make specific citations from their cells and the plaintiff is restricted to making only three requests per week.

He further alleges that on January 10, 2007, he specifically requested certain research material including the Kentucky Digest, the Federal Practice Digests, and the Kentucky Rules of Civil and Criminal Procedure, but was denied.  He alleges that even were the library adequate, in order to meet the requirement that he make specific citations, he would need access to the digests.  He contends that the denial of access to West's National Reporter System effectively denies access to the courts to perfect his appeal and defend his cases.  He also alleges that Louisville Metro has denied his commissary requests for postage, pen, and paper necessary to

communicate with the courts. He contends that he has already missed his court deadline for filing his appeal and that, although his mother was able to file a motion for him to receive an extension of time, he also missed the extended deadline because of Rees' and Campbell's denial of his right to access to the courts.

The first inquiry in any § 1983 case is whether a deprivation of a right secured by the Constitution or laws of the United States has occurred. *Baker v. McCollan*, 443 U.S. 137, 140 (1979); *Williams v. Bass*, 63 F.3d 483, 485 (6th Cir. 1995). In order to state a claim under § 1983, the plaintiff must allege both a violation of a right or rights secured by the Constitution and laws of the United States and that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

The courts have recognized repeatedly that there is no constitutionally protected right of access to a law library. *Lewis v. Casey*, 518 U.S. 343, 350-51 (1996). Prisoners do have a right of access to the courts, but it does not guarantee access to a prison law library. *Id.*; *Bounds v. Smith*, 430 U.S. 817, 830-31 (1977); *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985). Even when an inmate claims his access to the courts was denied *merely* because he was denied access to the prison library, or certain books, he fails to state a claim absent any showing of prejudice to his litigation. *Walter v. Mintzes,* 771 F.2d at 932. In order to state a claim for a denial of access to the courts, a prisoner must demonstrate actual prejudice to pending litigation that challenges his conviction or conditions of confinement. *Lewis v. Casey*, 518 U.S. at 351 ("[A]n inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense.").

The plaintiff's only specific allegation of actual prejudice to pending litigation is his

claim that he missed an appellate deadline, which his mother was able to have extended, which the plaintiff then again missed. However, in an abundance of caution the Court will allow this claim to go forward, but only against Campbell.

The plaintiff's claims against Rees must be dismissed. First, Rees is the Commissioner for the Commonwealth's Department of Corrections. The plaintiff does not allege that he is a state prisoner being held at Louisville Metro. Moreover, even assuming that Rees had supervisory responsibilities for the plaintiff at Louisville Metro, there are no facts which show any alleged constitutional violation or any personal knowledge of the alleged constitutional violations on Rees' part, except the plaintiff's allegation that Rees acted in concert with the other defendants. The doctrine of respondeat superior, or the right to control employees, does not apply in § 1983 actions to impute liability onto supervisors. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). To find a supervisor liable, he must have "either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct. . . ." *Hays v. Jefferson County, Ky.*, 668 F.2d 869, 874 (6th Cir. 1982).

The plaintiff does not set forth any manner in which Rees was personally involved in the alleged deprivations of his constitutional rights. Thus, the plaintiff has failed to set forth the basis for a § 1983 action against Rees. *Davis v. Sapp*, No. 99-5769, 2000 WL 572067, at *2 (6th Cir. May 1, 2000) (no supervisory liability where it was alleged that defendants were aware of deficiencies in plaintiff's medical treatment, but failed to intervene).

*C.     Overcrowding*

In Count IV, the plaintiff alleges that Rees and Campbell acting with the other defendants have subjected him to overcrowding. He alleges that Louisville Metro's severe overcrowding forces inmates to sleep and eat on the floor and under dinner tables. He states that his numerous complaints regarding the overcrowding have been ignored. He asserts that jail pods built to hold 24 inmates are currently housing more than 30 inmates on a regular basis; that the plumbing is inadequate with stopped-up sinks, overflowing toilets, and an overwhelming smell of human waste; and that there is an overwhelming disruption due to excessive noise and activity. He alleges that, since his incarceration, several inmates have committed suicide and there have been numerous fights because of the overcrowding.

Overcrowding in a prison is not itself a violation of the constitution. *Rhodes v. Chapman*, 452 U.S. 337, 347-48 (1981). Overcrowding conditions can be restrictive and even harsh; however, they do not violate the Eighth Amendment unless they deprive the inmate of the minimal civilized measure of life's necessities. *Id.* at 348. The plaintiff's allegations that the cell pods are crowded, that some inmates must eat and sleep on the floor, and that there is noise and disruption are not deprivations of the minimal civilized measure of life's necessities. The plaintiff's allegations that there is fighting among inmates due to overcrowding is purely conclusory. However, the Court will allow the plaintiff's allegation that overcrowding has caused the sinks and toilets to be stopped up and overflow to go forward against Campbell. *See id.*; *Halliburton v. Sunquist*, 59 Fed. Appx. 781, 782 (6th Cir. 2003) (sanitation is one of the basic human needs). Because the plaintiff alleges no personal involvement by Rees regarding this claim, the claim against Rees regarding overcrowding will be dismissed for the same reasons

8

as set forth in subsection B above.

*D.     Denial of medical care*

The plaintiff states that he suffers from bi-polar disorder and kidney stones, but that his requests to see doctors regarding his medical conditions have been ignored. He states that Louisville Metro finally gave him minimal medical attention on or about January 30, 2007, but he still has not received the results of tests taken to detect kidney stones. The plaintiff alleges that he told medical professionals that, because he is bi-polar and under stress, he desired medication but was only given Benedryl. He also states that Campbell and Louisville Metro have suspended all medications to all inmates, including the plaintiff, suffering from psychological problems.

The Eighth Amendment does not apply to pretrial detainees. *Weaver v. Shadoan*, 340 F.3d 398, 410 (6th Cir. 2003). "Under the Fourteenth Amendment Due Process Clause, however, pretrial detainees have a right to adequate medical treatment that is analogous to the Eighth Amendment rights of prisoners." *Watkins v. City of Battle Creek*, 273 F.3d 682, 685-86 (6th Cir. 2001) (citing *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)). "In the context of medical care for prisoners and detainees, it is well established that 'deliberate indifference to a prisoner's [or detainee's] serious illness or injury states a cause of action under § 1983.'" *Weaver v. Shadoan*, 340 F.3d at 410 (quoting *Estelle v. Gamble*, 429 U.S. 97, 105 (1976)) (alteration in original).

The plaintiff fails to state a claim for deliberate indifference to a serious medical need. He does not allege that he previously was receiving medication which was discontinued. Nor does he allege that he needs medication, only that he desired it. The plaintiff's belief that he

should have been given some kind of medication other than Benedryl merely constitutes a disagreement over medical treatment and, as such, does not state a claim under the Eighth Amendment. *See Estelle*, 429 U.S. at 107; *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."). Moreover, he does not allege that his not knowing the results of his kidney stone test was deliberate indifference or, in fact, that his not knowing has harmed him in any way. This claim will be dismissed.

*E.     Retaliation*

The plaintiff alleges that on January 11, 2007, after filing grievances concerning the law library and the overcrowded conditions, he was immediately taken from one cell block, where he had a bunk, to another, where he would have to eat and sleep on the floor. He states that when he refused to eat and sleep on the floor, a disciplinary action was initiated against him, and Louisville Metro officers placed him in segregation. He further alleges that unknown officers turned the heat off in his cell block to retaliate against him, causing numbness to his hands and feet, and refused to give him a grievance form or to honor his commissary request for Chap Stick, socks, paper, envelopes, and stamps. He contends that, after his mother contacted Campbell regarding the overcrowding, officers entered his segregation cell, allegedly for a shake-down search, threw the plaintiff off the walls, and slammed him onto the floor, placing handcuffs on him so tightly that they cut off his circulation. He states that an officer later told him that he was being written up for possession of Thorazine and alleged that the plaintiff had threatened to kill jail officers and their families. He alleges that he filed a grievance complaining

that he has not been given copies of his write-ups, after which officers tricked him into signing a form stating that he was pleading guilty to the charges. He states that he has incurred expenses and emotional distress.

Retaliation for the exercise of a constitutional right is itself a violation of the Constitution actionable under 42 U.S.C. § 1983. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). In order to have standing for such an action, the "'plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" *Id*. (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). The injury cannot be "abstract, conjectural, or hypothetical" but must be "distinct and palpable." *Id.* The Court concludes that the plaintiff's alleged injuries are "distinct and palpable" enough to confer standing to the plaintiff.

Having determined that the plaintiff has standing, the Court now turns to the elements of a § 1983 retaliation claim, which are: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two. *Id.* The plaintiff contends that he was retaliated against for: (1) refusing to sleep and eat on the floor; (2) filing grievances; and (3) his mother's complaints regarding overcrowding. His refusal to eat and sleep on the floor is not protected conduct. The plaintiff's filing of grievances is protected conduct. *See Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007). The Court will assume for purposes of this memorandum opinion that the plaintiff's mother's complaints to Louisville Metro officials constitutes protected conduct. *Cf. Reynolds v. Green*, 184 F.3d 589 (6th Cir. 1999).

Next, the plaintiff must show that an adverse action was taken against him. Not every action is constitutionally cognizable. *Ingraham v. Wright*, 430 U.S. 651, 674 (1977); *Thaddeus-X v. Blatter*, 175 F.3d at 396. "There is, of course a de minimis level of imposition with which the Constitution is not concerned." *Ingraham v. Wright*, 430 U.S. at 674. The adverse action necessary to state a constitutional violation must be such that it would "'deter a person of ordinary firmness' from the exercise of the right at stake." *Thaddeus-X v. Blatter*, 175 F.3d at 396 (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)). In the present case, the Court is unable to say that alleged retaliatory actions are de minimus.

The third element of a constitutional retaliation claim is the causal connection between the protected conduct and the retaliatory actions. Retaliation claims must include a "chronology of events from which retaliation may plausibly be inferred." *Cain v. Lane*, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988); *Brown v. MDOC*, No. 98-1587, 2000 WL 659031, at *2 (6th Cir. May 10, 2000). The complaint sets forth facts from which retaliation may be plausibly inferred. Therefore, the Court will allow the plaintiff's claims against Campbell for retaliation flowing from his filing of grievances and his mother's complaints to go forward.

*F.     Conspiracy charge*

In Count V, the plaintiff alleges that Louisville Metro, the Jefferson County Attorney's office, and the courts are aware that Louisville Metro inmates who opt to represent themselves are routinely denied access to the courts and to represent themselves. He alleges that Louisville Metro and the Jefferson County Courts are conspiring to subject him to cruel and unusual punishment for complaining about the jail and the courts. He alleges that the lack of rules for the government, security, safety, and cleanliness of Louisville Metro leads to dangerous conditions

in violation of federal and state law. He also alleges that Louisville Metro has admitted not having been issued an Occupancy Load Limit notice by the Fire Marshall. He asserts that such conditions constructively coerced him to plead guilty in 2005 to frivolous charges in order to get relief from those conditions.[2] He contends that all of the defendants are aware that the conditions violate his rights and are conducive for coercing all inmates to plead guilty and that Rees and Campbell acting with the other named defendants have conspired to deny the plaintiff's rights.

Such conclusory allegations of conspiracy are insufficient to state a claim. *See Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987). The claims will be dismissed by separate order.

*G.     Claims against McKune*

The complaint does not state any claims against McKune. It mentions McKune in that the plaintiff's mother had a meeting with McKune and was told a number of things about the workings of Louisville Metro by her. The complaint also states that McKune requested that the plaintiff's mother provide her a copy of the grievances the plaintiff had filed. The claims against McKune will be dismissed in their entirety.

*H.     Claims against Maze and Stengel*

The plaintiff alleges only that the Jefferson County Attorney and the Commonwealth Attorney met to conspire to urge the court to set an excessive bail and to deny the plaintiff access to the courts. The allegations against Jefferson County Attorney Maze and Commonwealth Attorney Stengel are merely conclusory and lack the requisite factual specificity. *Chapman v.*

---

[2] It appears that the plaintiff may be currently incarcerated because of parole violations after a 2005 guilty plea in addition to being a pretrial detainee awaiting trial on new charges.

*City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986) (some factual basis for such claims must be set forth in the pleadings). The Court is not required to accept conclusory and unsupported statements. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001). Consequently, the plaintiff's claims against Maze and Stengel will be dismissed for failure to state a claim upon which relief may be granted. *See id.* at 511-12.

### III. CONCLUSION

The Court will enter a separate order dismissing all claims against John D. Rees, Laura McKune, Irv Maze, and David R. Stengel; the plaintiff's claims regarding excessive bail; the denial of medical care; and the plaintiff's conspiracy claim pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted and all of the plaintiff's claims against Judges Willett, Cowan, Eckert, and McCormick-Bisig based on immunity. The Court also will enter a separate scheduling order governing the remaining claims. In permitting the remaining claims to go forward, the Court passes no judgment on the merits or ultimate outcome of this case.

Date:

cc: Plaintiff, *pro se*
    Defendants
    Jefferson County Attorney
4411.009

14